JS-6

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **JOHN C. HACKER, III,**<br><br>      **Plaintiff,**<br><br><br>      **vs.**<br><br>**DEUTSCHE BANK NATIONAL<br>TRUST COMPANY, et al.,**<br><br>      **Defendants.** | **Case No.: SACV 12-1017-DOC (ANx)**<br><br><br><br>**ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT [24]** |

Before the Court is the Motion for Summary Judgment ("Motion") filed by Defendants, Deutsche Bank National Trust Company, as Trustee for The Pooling and Servicing Agreement Dated as of November 1, 2006 Securitized Asset Backed Receivables LLC Trust 2006-FR4 ("Deutsche Bank"), and Ocwen Loan Servicing, LLC ("Ocwen") (Dkt. 24). Counsel for Deutsche Bank and Ocwen appeared at the hearing. No appearance was made on behalf of Plaintiff. After considering the relevant briefings and oral argument, the Court hereby GRANTS the Motion.

## I.      BACKGROUND

In this case, Plaintiff John C. Hacker asserted claims against Defendants related to the foreclosure of his residence. Plaintiff's sole remaining claim is that Deutsche Bank and Ocwen (collectively, "Defendants") violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL") by failing to timely respond to Plaintiff's Qualified Written Request ("QWR") as required under the Real Estate Settlement Procedures Act ("RESPA"). The following facts are taken from Defendants' Separate Statement of Undisputed Facts ("SUF").

### A. Plaintiff's Loan Default and QWR to Ocwen

Prior to the foreclosure of Plaintiff's residence, the loan servicer, HomEq Servicing, offered Plaintiff a proposed Loan Forbearance Agreement (the "Agreement"). SUF # 13. Plaintiff admits signing the Agreement on May 25, 2010. SUF # 13. The Agreement provides that Plaintiff was required to pay $1,889.72 in July, August and September 2010, followed by a payment of $43,169.99 in October 2010. SUF # 14. Plaintiff never made the $43,169.99 payment in October 2010. SUF # 16. Because Plaintiff failed to comply with the specific terms of the Agreement, the loan was placed into default and was sold to a third party purchaser at a trustee's sale on February 10, 2011. SUF # 21.

On or about February 7, 2011, Ocwen (who was apparently the loan servicer at the time) received a QWR from Plaintiff. SUF # 17. On February 26, 2011, Ocwen sent Plaintiff an acknowledgement letter stating that Ocwen would respond to Plaintiff's letter within 60 days. SUF # 18. On April 13, 2011, Ocwen sent a letter responding to Plaintiff's QWR. SUF # 19.

### B. Procedural Background

On October 28, 2011, Plaintiff filed a complaint against Defendants and others in the Orange County Superior Court. Def. Request for Judicial Notice ("RJN"), Ex. 2 (Dkt. 28-2). On February 7, 2012, the superior court sustained a demurrer as to all claims asserted in the complaint. RJN, Ex. 3 (Dkt. 28-3). The court granted Plaintiff leave to amend only the UCL claim. *Id.* On February 27, 2012, Plaintiff filed a First Amended Complaint only alleging a UCL claim. RJN, Ex. 1 (Dkt. 28-1) ("FAC"). On June 5, 2012, the superior court sustained Defendants' demurrer as to Plaintiff's UCL claim "without leave to amend as to every

allegation except Plaintiff's alleged violation of [RESPA] as alleged under the 'unlawful' prong of [the UCL]." RJN, Ex. 7 (Dkt. 28-7). Defendants then removed the case to federal court. Notice of Removal (Dkt. 1).

On June 14, 2013, the parties submitted a joint motion to modify the Scheduling Order. Dkt. 16. The motion stated that "to date Plaintiff ha[d] failed to prosecute the claim due to an ongoing health condition." *Id.* As requested, the Court continued the trial date (and other dates). Dkt. 17.

On January 24, 2014, Defendants filed the present Motion. Dkt. 24. On January 30, 2014, Plaintiff filed (1) a motion requesting that the Court stay the proceedings for one year based on Plaintiff's medical condition and (2) a separate request for an extension of time to oppose Defendants' Motion. Dkt. 29, 31. On February 11, 2014, the Court vacated all scheduled dates and stayed the proceeding. Dkt. 35. The Court also ordered Plaintiff to file periodic, one-page status updates briefly explaining his condition as it relates to his ability to prosecute this action. *Id.*

At a status conference held on September 8, 2014, the Court lifted the stay. Dkt. 42. The Court later set a hearing date of February 17, 2015, for Defendants' previously filed motion for summary judgment. Dkt. 46.

## II.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. Whether a fact is material is determined by the substantive law governing the claim or defense. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Local Rule 56-3 provides:

> In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

When the non-moving party does not file an opposition, a court must still determine whether summary judgment is appropriate. *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

## III.   ANALYSIS

### A.  Plaintiff Did Not Oppose the Motion

As a preliminary matter, the Court notes that Plaintiff failed to file any written opposition to the Motion. Because Plaintiff did not file a "Statement of Genuine Disputes" and written evidence, the Court "assume[s] that the material facts as claimed and adequately supported by [Defendants] are admitted to exist without controversy." *See* L.R. 56-3. However, Plaintiff's failure to oppose the motion "does not excuse [Defendants'] affirmative duty under Rule 56 to demonstrate [their] entitlement to judgment as a matter of law." *Martinez*, 323 F.3d at 1182.

### B.  Defendants Are Entitled to Summary Judgment on Plaintiff's UCL Claim

California's UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Violation of a federal, state, or local law may serve as the basis for a UCL claim. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citations omitted); *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)

-4-

("In effect, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."). When a plaintiff's UCL claim is based on an alleged violation of law and the court determines that the defendant did not violate the "borrowed" law, the UCL claim fails. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001); *Lazar*, 69 Cal. App. 4th at 1505.

Plaintiff's only remaining claim is his UCL claim based on his allegation that "OCWEN violated federal RESPA by failing to address QWR timely." FAC ¶ 39(g).

"RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)). A "qualified written request" from a borrower is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

The version of RESPA in effect at the time Plaintiff submitted his QWR to Ocwen, provided that, in general, a loan servicer must "provide a written response acknowledging receipt of the QWR within 20 days (excluding legal public holidays, Saturdays, and Sundays)." 12 U.S.C. § 2605(e)(1)(A).[1] The loan servicer must then respond within 60 days after receipt of the QWR by providing specific information and, where appropriate, action. 12 U.S.C. § 2605(e)(2). "If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages of up to $1,000." *Medrano*, 704 F.3d at 665 (citing 12 U.S.C. § 2605(f)).

---

[1] RESPA was amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act by, among other things, shortening the deadlines for loan servicers to respond to QWRs and raising the amount of statutory damages available upon a showing of a pattern or practice of noncompliance. The changes went into effect on July 21, 2011.

Ocwen received Plaintiff's QWR on February 7, 2011. Ocwen's response acknowledging receipt of the QWR on February 23, 2011 was made within the 20-day period. *See* 12 U.S.C. § 2605(e)(1)(A). Owen then provided a substantive response to Plaintiff's QWR on April 13, 2011. Excluding weekends and public holidays (as directed by the statute) the response was within the 60-day period provided by RESPA. 12 U.S.C. § 2605(e)(2).

Therefore, based on the undisputed evidence, Owen's response to Plaintiff's QWR was timely and Plaintiff's claim that Ocwen violated RESPA fails as a matter of law. Accordingly, Defendants are entitled to summary judgment on Plaintiff's UCL claim based on a violation of RESPA. *See Lazar*, 69 Cal. App. 4th at 1505 (holding that the plaintiff's UCL claims based on alleged violations of Unruh Act fail as a matter of law because the defendant's conduct did not violate the Unruh Act). Because the Court is granting the Motion, it need not address Defendants' alternative arguments for granting the Motion.

## IV.   DISPOSITION

Based on the foregoing, Defendants' Motion is GRANTED. To the extent Plaintiff still has any claims against any defendants other than Deutsche Bank and Ocwen, those claims are dismissed for failure to prosecute. *See* L.R. 41-1 and 41-5.

DATED:  February 17, 2015

*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE